IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.       1:22-cv-03113

<u>S.B.</u>, Petitioner,

v.

<u>Merrick GARLAND, Attorney General of the United States ("A.G.") in his official capacities;</u>
<u>Alejandro MAYORKAS, Secretary, U.S. Department of Homeland Security ("DHS");</u>
<u>Tae D. JOHNSON, Acting Director, U.S. Immigration and Customs Enforcement ("ICE"), in his official capacity;</u>
<u>Corey A. PRICE, Executive Associate Director (DHS), ICE Enforcement and Removal Operations Directorate ("ICE ERO");</u>
<u>Christopher L. JONES, Acting Director / Chief Officer in Charge, ICE ERO Field Office (Denver), in his official capacity;</u>
<u>GEO Group, Inc., in its capacity as a contractor for ICE ERO;</u>
<u>Warden of the Denver ICE contract detention facility in Aurora, Colorado owned and operated by GEO Group under contract to ICE, in their capacity as custodian of Petitioner;</u>
<u>Executive Office of Immigration Review ("EOIR")</u>

Respondents.

(*Note: If you are attacking the validity of a state conviction or sentence and not the execution of your sentence, you must file an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. If you are attacking the validity of a judgment entered in a federal court, you must file a motion pursuant to 28 U.S.C. § 2255 in the federal court that entered the judgment.*)

---

**APPLICATION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241**

---

**NOTICE**

Federal Rule of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should not contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include only: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

## A. APPLICANT INFORMATION

*You must notify the court of any changes to your address where case-related papers may be served by filing a notice of change of address. Failure to keep a current address on file with the court may result in dismissal of your case.*

<u>S.B. A# 220-712-429, Aurora ICE Detention Center, 3130 N. Oakland St., Aurora, CO 80010</u>
(Applicant's name, prisoner identification number, and complete mailing address)

*Indicate whether you are a prisoner or other confined person as follows: (check one)*

- ___ Pretrial detainee
- ___ Civilly committed detainee
- _X_ Immigration detainee
- ___ Convicted and sentenced state prisoner
- ___ Convicted and sentenced federal prisoner
- ___ Other: (*Please explain*) _____

## B. RESPONDENT INFORMATION

<u>Petitioner Merrick GARLAND is the Attorney General of the United States and Chief Executive of the U.S. Department of Justice, 950 Pennsylvania Ave. NW, Washington, D.C. 20530</u>

Alejandro MAYORKAS, Secretary, U.S. Department of Homeland Security, , in his official capacity
Office of the General Counsel
2707 Martin Luther King Jr Ave SE
Washington, D.C. 20528-0525
202-282-8000

Tae D. JOHNSON, Acting Director, in his official capacity
Office of Immigration and Customs Enforcement
U.S. Department of Homeland Security
500 12th St SW
Washington, D.C.     20536

Corey PRICE, Exec.Assoc.Director, in his official capacity
ICE Leadership - U.S. D.H.S.
U.S. Immigration and Customs Enforcement
Enforcement and Removal Operations Directorate
500 12th St., SW
Washington, D.C.     20536
1-888-351-4024

Christopher L. JONES, Acting Director/ Chief-Officer-in-Charge, in his official capacity

2

U.S. Immigration and Customs Enforcement (DHS)
Enforcement and Removal Operations - Denver Field Office
Office of the Acting Director/ Chief-Officer-in-Charge
12445 E. Caley Avenue
Centennial, CO   80111
Ph: (720) 873-2899
Denver.Outreach@ice.dhs.gov

GEO Group, Inc., in its capacity as detention contractor to ICE ERO;
Central Regional Office
1777 NE Loop 410
Suite 1100
San Antonio, TX 78217
ph:  210-804-4500
fax: 210-804-4580

Warden, Aurora Detention Center, in his capacity as custodian to Petitioner
Aurora ICE Contract Detention Facility
Office of the Warden
3130 North Oakland Street
Aurora, CO        80010
ph: (303) 361-6612

Executive Office of Immigration Review, U.S. Dept. of Justice
Office of the General Counsel (OGC)
5107 Leesburg Pike
Suite 2600
Falls Church, VA 22041
800-898-7180

---

C.   **STATEMENT OF CLAIMS**

*State clearly and concisely every claim you are asserting in this action.  For each claim, specify the right that allegedly has been violated and all facts that support your claim.  If additional space is needed to describe any claim or to assert additional claims, use extra paper to continue that claim or to assert the additional claim(s).  Please indicate that additional paper is attached and label the additional pages regarding the statement of claims as "C. STATEMENT OF CLAIMS."*

CLAIM ONE:  Prolonged detention in violation of the Fifth and Eighth Amendments of the U.S. Constitution, the Supremacy Clause, U.S. Const. Art VI, Para. 2; and international treaties

Supporting facts: Petitioner is an ethnic Kurdish national of Turkey seeking asylum on the basis of persecution for his race and ethnicity (Kurdish), Nationality, political beliefs, activities, and associations, and withholding of Removal under the INA and the Convention Against Torture.

Petitioner is a 30-year-old college graduate, civil engineer, and conscientious objector to compulsory military service in Turkey and he has experienced a lifetime of harassment and surveillance from Turkish national police and security forces, the traumas from which have caused chronic Post-Traumatic Stress Disorder.

As a legitimate asylum-seeker fleeing persecution in Turkey, whose history of persecution of ethnic Kurds is notorious, long-standing, and objectively demonstrable, Petitioner should never have been detained in the first place. However Petitioner has been detained by Respondents DHS, ICE ERO, and ICE ERO Denver Field Office since on or about November 27th, 2021, pending the outcome of his immigration proceedings, which are currently pending appeal before the 10th Circuit Court of Appeals (Case No. 22-9574). Petitioner is suffering from nine health conditions, all of which are aggravated by and have grown increasingly acute in detention, and for which he has received inadequate care limited to the provision of medication and consultations with mental health clinicians, but for which he has not been referred to outside specialty medical care that he urgently needs and which Respondents DHS, ICE, and ICE ERO / Denver Field Office have failed to provide. It is the consensus opinion of the clinical medical staff at the Aurora ICE Detention Center Medical Unit, as well as Petitioner's medical expert, Dr. Hadley Osran, that he stands no hope of reasonable recovery or improvement unless and until he is released from detention.

In addition to his chronic PTSD, Petitioner suffers from Major Depression (recurrent), Anxiety and High-Blood Pressure including from panic attacks induced by circumstances triggering his PTSD, as well as numerous serious physical health conditions, including an eardrum perforated in three places, causing him extreme pain, which has remained untreated during the entirety of his detention; a herniated disc in his neck; possible nerve damage resulting from the same which is reducing his mobility, balance, and ability to walk; chronic pharyngitis (extreme sore throat) whose growing acuity makes it difficult for him to swallow and speak; serious tooth decay in four teeth, two of which were treated but the other two of which have now progressed to the point of requiring oral surgery (root canals), which have made it difficult for him to chew and eat; and high blood pressure and chest pain which is aggravated by his mental health conditions.

Petitioner's detention is both a proximate cause of, and an aggravating factor of, these health conditions which have not been treated and which now risk resulting in permanent impairment to Petitioner's basic life functions including deafness in one ear, his ability to bathe and clean himself, his ability to walk and engage in regular activities, and his sanity, mental health, and well-being. The steam and hot water from the showers at Petitioner's detention facility trigger his PTSD resulting in injury on at least one occasion, when he passed out in the shower and injured himself. Petitioner's repeated requests for reasonable accommodation of his chronic PTSD by providing him with an alternative means of bathing himself which does not trigger his PTSD have been ignored or denied. As such, Petitioner is forced to choose between compromising his mental health, or compromising his physical health and basic human dignity, on a daily basis.

Petitioner's health and well-being have spiraled downwards in detention, to the point where he is no longer able to consume solid food or retain even the liquid diet to which he has been reduced, resulting in frequent vomiting and weight loss to the point where his body mass index stands

below 18, which makes him clinically underweight, an objectively dangerous state. In addition, Petitioner's mental health, his mental well-being, and his cognitive capabilities have also been seriously damaged and impaired while in detention, to the point where his continued detention constitutes an ongoing violation to his right to due process, fairness in his proceedings under the Fifth Amendment of the U.S. Constitution, as well as his right not to be subject to cruel or unusual punishment under the Eighth Amendment to the Constitution and the Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment (CAT). To the extent that he is forced to choose between continuing to pursue his legitimate asylum claims, or be subject to confinement which is permanently damaging his mental and physical health and impairing his basic life functions, Respondent's treatment of Petitioner amounts to a constructive refoulement in violation of U.S. non-refoulement obligations under the *Refugee Convention* and the CAT, which are implemented through the *Immigration and Nationality Act*.

Petitioner was detained at the Cibola County Correctional Center in Milan, NM (owned and operated by CoreCivic) from on or around April 18th, 2022, until July 18th or 19th, 2022, at which time he was transferred to the Aurora ICE Contract Detention Center owned and operated by Respondent GEO Group. Respondents ICE ERO and GEO Group / Aurora ICE Detention Center have provided no indication that he will receive treatment for his ruptured eardrum, his herniated disc and related possible nerve damage, or his other serious physical health conditions.

It is clear that his ongoing prolonged detention is impacting his basic cognitive functions and impairing his basic life functions. Petitioner has already been placed on suicide watch on at least one occasion, and his repeated requests to be referred to appropriate specialty medical care for his emergent physical injuries and serious health conditions have come to nothing. Petitioner's multiple requests for parole have also been ignored or denied by Respondents, notwithstanding the extreme seriousness of his deteriorating health conditions to the point where their acuity is putting his life and safety at risk, and Petitioner's abundant medical evidence documenting his deterioration.

Respondent ICE ERO also acted in bad faith, agreeing to provide Petitioner with his much-needed health care when, out of desperation for the many months he had gone without adequate care while his health deteriorated, Petitioner had threatened a hunger strike in July 2022. Petitioner's counsel worked with Petitioner's family in Turkey and with Respondent ICE ERO's El Paso Field Office and the Warden of the Cibola County Correctional Center to convince him not to go on hunger strike, in exchange for which, Respondent ICE ERO was to expedite consideration of his requests for medical care and provide whatever medical care was available at his then-detention center in July 2022. However, in lieu of providing Petitioner some direly-needed specialty medical care, including consultation with an Ear, Nose, and Throat specialist about his ruptured eardrum, chronic pharyngitis, and herniated disc in his neck, all of which were causing him extreme pain and making it difficult for him to eat or swallow, Petitioner was instead summarily transferred by the ICE ERO to its contract detention facility in Aurora, CO, as a result of which transfer, Petitioner contracted COVID-19, further unnecessarily exacerbating what was already an acute health crisis.

Petitioner was denied his motion for a hearing for redetermination of his custody, and denied any

meaningful opportunity to scrutinize the justification for his continued prolonged detention given the serious and detrimental impact detention has had and is having on his physical and mental health, well-being, and stability.

Petitioner has still had no opportunity to present his medical records, medical research, and expert medical evidence with respect to his health conditions or to challenge his detention in light of these serious health conditions which will not improve unless and until Petitioner is released, as confirmed by both the medical staff at the Aurora ICE Detention Center, as well as Petitioner's medical expert, Dr. Hadley Osran, a Board-certified clinical psychologist with 35 years of experience evaluating and assessing prisoners and other incarcerated individuals, as well as administering to veterans and active-duty soldiers during his service in the U.S. military. Dr. Osran reviewed the entirety of Petitioner's medical records in detention that have been made available to Petitioner (from ~April 18th, 2022 through September 23rd, 2022) as well as Petitioner's previously-submitted medical research, and Petitioner's own record of his ongoing medical care (or lack thereof) and mental health conditions. It is clear to Dr. Osran and to medical staff that Petitioner's serious psychosomatic stressors are the proximate cause of his inability to eat or retain solid food, and that there is no sign that this situation will improve in detention, and as such, we reasonably infer on the basis of this record that his health will continue to deteriorate absent intervention by this Court.

Petitioner is a legitimate asylum-seeker with NO prior immigration history or prior attempts to enter the U.S., no criminal or arrest record of any kind, and presents no danger to U.S. persons or property. Petitioner has multiple sponsors willing and able to care for him and to provide him safety and stability pending the outcome of his immigration proceedings, including another clinical psychologist in the employ of the State of Ohio for over 24 years, Dr. Mujgan Inciler-Strunk, who has agreed to care for Petitioner and facilitate his access to the appropriate medical care that he has been denied for over a year in detention.

Petitioner's detention is justified only by his arbitrary designation as a "flight risk" prior to the diagnoses of his mental health conditions and without opportunity to meaningfully scrutinize the basis for the designation, which is a violation of his Fifth Amendment right to due process in removal proceedings, and which detention does not seem to have any foundation independent of the erstwhile designation by the border patrol agent at the time he was initially detained nearly one year ago. All of Petitioner's medical conditions have worsened significantly, some now requiring still-more specialized medical care being denied Petitioner. Petitioner remains critically ill and dangerously underweight.

Petitioner was also deprived of due process in his removal proceedings due to the probable impact of his then-undiagnosed mental health conditions (major depression, chronic PTSD, and anxiety) on his ability to testify concerning his past traumas and persecution, as well as his ability to meaningfully participate in, and prepare for, any future hearings relating to his immigration proceedings. Petitioner's due process rights to a fair hearing and his right to counsel have been compromised by the failure to treat his conditions, or to challenge the basis of his detention or the circumstances of his detention, or to grant any meaningful or individualized consideration for the appropriateness of his detention in light of his health conditions, by Respondents DHS, ICE, ICE

ERO (El Paso) and ICE ERO (Denver Field Office).

COUNT TWO: Denial of due process in the adjudication of Petitioner's custody matters

Both Petitioner's asylum merits hearing on March 15th, 2022, and his only custody redetermination hearing on March 9th, 2022, occurred prior to the diagnoses of his multiple serious mental health conditions on May 17th, 2022. Yet Petitioner's motion for a hearing before the Otero Immigration Court filed June 3rd, 2022, to present evidence of his newly-diagnosed medical conditions, the impact of detention on those conditions, and to scrutinize and challenge the evidentiary basis of the Respondent's arbitrary designation of his alleged risk of flight and the constitutional violations inherent in his prolonged detention under these circumstances, was denied without a hearing. Circumstances suggest the immigration court did not even have time or opportunity to review Petitioner's reply to Respondent DHS's opposition to his motion for a custody hearing, as its cursory denial was issued within minutes of Petitioner's having filed his reply to Respondent DHS's opposition to his motion, which contained serious errors and representations of fact not supported on the record before the immigration court. The only reasoning given for the denial of his hearing request was "Lack of jurisdiction and/or no change."

Petitioner filed a timely appeal of this summary denial of his custody redetermination hearing request to the Board of Immigration Appeals, constituent agency of Respondents EOIR and U.S.A.G. Garland, on July 9th, 2022 to the Board of Immigration Appeals, which was also considering the appeal of his asylum claims on the merits. Petitioner filed a Motion to Expedite the Appeal decisions of the BIA on July 27th, 2022 for decision on both pending appeals, due to his the continued deterioration of his serious health conditions, and following the bad faith actions of Respondents' unilateral transfer of Petitioner to another facility without notice or explanation on or about July 19th, further putting his life and health at risk, along with several hundred pages of evidence demonstrating why Petitioner's acute medical needs required immediate decision from the BIA on his detention and the immigration court's cursory denial of his hearing request.

Inexplicably, the BIA only issued an appeal decision on his merits on September 23rd, 2022, while the appeal of his request for a hearing remains unaddressed, leaving Petitioner in a procedural legal limbo where he can neither obtain effective care, effective redress for his ongoing detention, or any meaningful access to justice or a hearing before the immigration court within Respondent EOIR.

Petitioner cannot submit another Motion to Expedite on top of the one already submitted in July, along with hundreds of pages of evidence in support of his Motion to the BIA. Petitioner has fully exhausted all other avenues of administrative relief, including multiple requests for parole and requests for reconsideration of the denial of his requests for parole, all of which were denied by Respondent ICE ERO notwithstanding the fact that its own policy guidelines call for release of persons such as Petitioner, who have acute and potentially life-threatening health conditions exacerbated by detention.

As such, Petitioner now comes to this Court as a means of last resort to obtain his right to be heard and to challenge the basis of his continued confinement which already exceeds twelve months and is constitutionally unjustifiable in light of Petitioner's right not to be arbitrarily

detained and deprived of his liberty, his health, his sanity, and his basic life functions, without due process of law.

This application will be further modified and re-submitted with appropriate citations to legal authorities as soon as possible.

COUNT THREE: Petitioner challenges the validity of 8 C.F.R. § 1003.19(d) both as-applied to his circumstances, as well as on its face due to the vagueness of its mandate that custody proceedings be entirely "separate and apart from" removal proceedings, but also that "the determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge."

Respondent respectfully submits that the Court's stated reasons for denial of Respondent's Motion, specifically "lack of jurisdiction and/or no change," require further clarification in three respects: first, to specify the reason(s) why the Court lacks jurisdiction; second, why there is "no change;" and third, which of the two reasons were the basis for the denial, as these two reasons are mutually exclusive, given the fact that the immigration court cannot find that his circumstances have not materially changed, while at the same time ruling it has no jurisdiction to make such a fact-finding.

Respondent further offers a possible reason for the Court's lack of jurisdiction, but requests further modification of the Court's disposition of the Motion, or in the alternative, reconsideration of the merits of Respondent's motion for a custody redetermination hearing by an appropriate Immigration Court; or for Respondent's immediate release in light of Respondent's rapidly declining physical and mental health based on the evidence on record of the extremely detrimental impacts of detention on Respondent's health, and of ICE's disregard for Respondent's acute state of ill-health and its failure to provide basic accommodations for his condition, which the government has failed to accommodate.

With respect to the Court's apparent finding that it lacks jurisdiction to approve Respondent's motion for a hearing, the lack of specificity as to the reasons why it lacks jurisdiction precludes any meaningful review of the legal basis that purportedly deprives this Court of its plenary jurisdiction to determine these matters. Respondent respectfully submits that this Court has and continues to enjoy plenary authority to determine the facts and circumstances of, and the appropriate justification for, DHS's custody of Respondent in detention or through appropriate alternatives, as this authority is delegated to this Court through the Attorney General by the Immigration and Nationality Act and the Regulations drafted for its implementation; see *Matter of Cerda Reyes*, 26 I&N Dec. 528, 530 (BIA 2015); 8 C.F.R. §§ 1003.14, 1003.19.

Petitioner respectfully requests the Court clarify the application of 8 C.F.R. § 1003.19(d) to his circumstances or otherwise mandate that the constituent agencies of Respondent EOIR do the same, specifically on the alleged "lack of jurisdiction," as the lack of any reasons for the immigration court's finding that it lacks jurisdiction deprives Petitioner of due process by failing to identify what specific statute, principle of law, or procedure would deprive the immigration court of the authority otherwise delegated to it to determine the appropriateness of Respondent's

extended detention and the circumstances of that detention; *ibid.*

Petitioner submits that the only basis for which the immigration court may lack jurisdiction over Respondent's Motion for a Hearing for Redetermination of Custody is due to the fact that such jurisdiction was improperly assigned by Respondent EOIR to the same court that recently determined Respondent's removal proceedings, because such a Court is incapable of meeting the requirements of 8 C.F.R. § 1003.19(d), specifically its requirement that "Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be **separate and apart from, and shall form no part of**, **any** deportation or **removal hearing or proceeding**" (emphasis added) in combination with the mandate that the Judge base their custody determination "upon any information that is available to the Immigration Judge." *Ibid*.

As a practical matter, it is neither reasonable to expect an immigration court to refrain from taking cognizance of information already within the scope of its knowledge from a recently-concluded removal proceeding, nor feasible that it could, when those proceedings must be "separate and apart from, and…form no part of" the subsequent custody redetermination proceeding. As the Court's knowledge and impressions from the recently-concluded removal proceedings constitute "information that is available to the Immigration Judge," such a Judge could not be reasonably expected to consciously disregard his or her own findings and conclusions from the removal proceeding over which he or she had just presided. It is simply not possible that such a Court could comply with the regulation's strict requirement that it conduct this subsequent custody redetermination entirely "separate and apart from" the very same proceedings whose information and subject-matter are well within the scope of the Court's knowledge and awareness, when the regulation also stipulates that the Court may use any information "available to the Immigration Judge."

If, as here, Petitioner's custody determination is assigned to the Court that just presided over his removal proceedings, then Petitioner respectfully submits that such an assignment renders the Court incapable of complying with 8 C.F.R. § 1003.19(d) in the manner described, and thus deprives it of its jurisdiction over custody redetermination proceedings, because its exercise of jurisdiction over those proceedings subsequent to the removal proceedings over which it had just presided would render the two sentences of the regulation self-contradictory, insofar as the Immigration Court would be deprived of the regulation's authorization to use information available to it by the simultaneous requirement that custody proceedings be wholly separate and apart from removal proceedings.

The regulation of Respondents A.G. Garland and the EOIR should not be applied or read in a way that is self-contradictory, which is inconsistent with the requirement that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available;" see *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982).

In order to avoid a circumstance wherein both sentences of the regulation concerning the exercise of jurisdiction over custody and bond matters contradict one another, the regulation

must be read to require that requests for custody determinations received after Petitioner's removal proceedings be presided over by an immigration court and an immigration court judge other than the one who presided over Petitioner's removal proceedings. Such was not the case here. As such, Petitioner respectfully invites the Court to clarify that it lacked adequate jurisdiction due to the impossibility of its exercise of jurisdiction in conformity with 8 C.F.R. § 1003.19(d) due to its having just conducted Respondent's removal proceedings, because it is not possible for a Judge to make use of "any information…available to the Immigration Judge" while also ensuring that information be "separate and apart from, ***and shall form no part of***" that custody redetermination.

The Otero Immigration Court should not have been placed in this position of applying a regulation whose contradictory commands it could not be reasonably expected to follow. Petitioner respectfully suggests that the referral of Petitioner's motion to the same court that had just heard his merits claim was improper, and the Court therefore lacked jurisdiction over Respondent's motion for custody redetermination proceedings due to its prior exercise of jurisdiction over Respondent's removal proceedings which may have prejudiced the court's assessment of his motion. Petitioner further respectfully submits that this interpretation is the only reasonable interpretation of the Court's finding that it has "No jurisdiction," in light of the authority it otherwise exercises under authority delegated to it by Respondent Attorney General under the statute and through the regulations implementing it; see *Matter of Cerda Reyes* at 530 (language of the regulation "makes clear that the authority to hear bond cases comes from the Act itself, via delegation from the Attorney General.")  This authority extends to consideration for the fact and circumstances of Respondent's confinement, given Petitioner is detained pending further consideration of his asylum application.

Petitioner respectfully further submits that if the immigration court lacked jurisdiction over custody redetermination proceedings subsequent to the removal proceedings over which it had also presided, such a court does not lack jurisdiction over the granting of a motion to conduct these proceedings by referral to a more appropriate court; *ibid*. at 530. Petitioner respectfully submits that the only reasonable basis for the court's finding that it lacks jurisdiction was this one – due to the fact of its having presided over his removal proceedings, which are to be "entirely separate and distinct from" his custody proceedings, per the regulation, in which case the immigration court's denial of Petitioner's June 3rd, 2022 Motion under these circumstances requires reconsideration, as an appropriate disposition would not be denial on the basis of "no change," but referral of the Motion to the Office of the Chief Immigration Judge "for the designation of an appropriate Immigration Court," with an appropriate Immigration Court being one not so encumbered by its prior knowledge of Petitioner's removal proceedings as to be incapable of complying with the requirements of 8 C.F.R. § 1103.19(d) that it ensure custody redeterminations be wholly and completely separate from removal proceedings, while not being deprived of the ability to "use any information available to" it.  Such a determination should lie before another Immigration Court whose jurisdiction is appropriately exercised in conformity with 8 C.F.R. § 1003.19(d). Petitioner respectfully submits that such referral, if necessary, should include the entire record of Respondent's Motion, including the supporting Exhibits, Respondent's supplemental medical evidence, DHS's Opposition to the Motion, and Respondent's Reply to that Opposition, along with a declaration that any court considering such

motions give adequate time to persons such as Petitioner to prepare a proper reply, and instruction to the court that such a hearing decision not issue until at least 72 hours have passed from the time of Respondent DHS's submissions in opposition to Petitioner's hearing request, in order to allow Petitioner's counsel sufficient time to consider that submission, confer with Petitioner, and prepare an appropriate and detailed reply, consistent with Petitioner's right to due process and a fair hearing (and his motion for the same).

Summing up the procedural history of the instant case, then, Petitioner's March 9th bond hearing denied his request months before Petitioner's mental health diagnoses, which diagnoses confirm that his Major Depression and chronic PTSD conditions will only likely worsen in detention. Then petitioner's two requests for parole to the ICE ERO El Paso Field Office on April 19th and May 3rd were essentially ignored, with no reply ever given to Petitioner's counsel (though later review indicates the Respondent's Deportation Officer replied via email to a paralegal of Petitioner's counsel, but not to Petitioner's Counsel of Record). Then Petitioner's submitted his request for a second custody hearing in light of his serious mental health diagnoses on June 3rd, 2022, with detailed medical evidence and additional medical research pertaining to his conditions. At 8:36 PM on June 7th – the same day Petitioner's legal brief on the merits were due to the BIA – Respondent DHS / ICE opposed the motion with representations in its response not supported by the record. Given Petitioner's BIA appeal brief on the merits was due that same evening, this left Petitioner's counsel very little time to adequately respond to DHS' Opposition on his hearing request prior to the Otero Immigration Court's cursory denial of that request within minutes of the Reply being filed on June 9th, 2022, when this Reply clarified important facts on the record before the immigration court. Petitioner respectfully submits for consideration before this Court that this is too-short a timeframe to provide adequate opportunity for Petitioner's right to due process, as Petitioner's counsel was essentially given one day and one morning to review DHS' opposition motion, to scrutinize its characterization of complex medical evidence, to prepare a detailed reply outlining with particularity almost 80 pages of Petitioner's medical evidence and how this was inconsistent with Respondent's submissions, to reach Petitioner in detention in order to confer with him about the accuracy of the records and the sufficiency of his care in light of his increasingly-severe health conditions, before preparing a filing which was then rejected by the Otero Immigration Court's within minutes of being submitted.

The regulation does not specify minimum response time to be provided to parties in custody proceedings which tend to be less-formal and without the need for careful consideration of detailed medical evidence; 8 C.F.R. § 1003.19(d). However the immigration court did not allow Petitioner even 48 hours to reply to DHS' opposition to his hearing request, and did not allow itself even an hour to consider that submission, before denying Petitioner's request. Arguably this was insufficient time to for Petitioner's counsel to prepare to clarify the record with respect to Petitioner's medical conditions and the impact of his detention on those conditions. Nor was sufficient time given by the immigration court whose decision denying the hearing request – all the more important given it was denying Petitioner's only opportunity for a hearing on the fact and circumstances of his custody, when Petitioner was already in an extremely precarious and vulnerable state.

Petitioner's medical evidence and medical research in support of his request were submitted and denied without a hearing, because "lack of jurisdiction and/or no change," a self-contradictory single-line ruling, under circumstances that make it impossible for the immigration court to have reasonably considered the Petitioner's reply to DHS's opposition to the hearing request (i.e. within minutes of Petitioner's submission of his reply). Then after filing an appeal of that denial, and in desperation (in circumstances which themselves evidence Petitioner's declining mental health and sense of hopelessness), Petitioner's threatened hunger strike finally elicited some reaction from the detention facility to obtain needed care, only to find himself summarily and unilaterally transferred, without notice or explanation, and contrary to assurances made surrounding the threatened hunger strike, after Petitioner raised the issue of the lack of reasonable accommodation of his impairments (specifically, lack of access to bathing facilities that do not trigger his PTSD). Petitioner then contracted COVID in the course of the transfer, further exacerbating his already-serious health situation. Petitioner then submitted a Motion to Expedite the appeal decision on his denied bond hearing request on July 27th, submitting hundreds of pages of evidence in support of this filing – only to have that request ignored also, and without explanation, when such explanation could arguably be expected in light of the BIA's issuance of its decision of his other appeal on the merits. Then Petitioner's additional parole requests, submitted with the same medical evidence, as well as further additional evidence since the June bond hearing request was denied that his conditions were indeed worsening, just as Petitioner's medical research suggested they would, but with all requests denied on the basis that Petitioner was allegedly a "flight risk," while denying Petitioner any opportunity to challenge that designation, which was arbitrary and capricious to begin with, based as it was solely on the means by which Petitioner sought asylum – which is not in and of itself illegal, and which should not itself occasion disparate treatment under applicable international treaty standards applicable to asylum-seekers like Petitioner.

The minimal time provided to Petitioner and Petitioner's counsel, as well as the minimal time given to the consideration of Petitioner's submission, exacerbated the already-serious denial of medical care, the denial of multiple requests for the same, multiple parole requests being denied or ignored, and then Petitioner's access to the immigration court and an immigration court hearing being denied, arguably arbitrarily given the short timeframe of the issuance of the denial, and raising reasonable doubts as to whether any meaningful regard was given to the immigration court's consideration of Petitioner's reply and its clarification of the record in reply to Respondent DHS's opposition to its motion. This lack of access to the immigration court compounded already-existing doubts as to whether any of Petitioner's requests for medical care were being heard or taken seriously by anyone, further exacerbating his sense of hopelessness and depression. Finally, these were exacerbated again by Respondent EOIR's ignoring Petitioner's Motion to Expedite its decision on the denial of his hearing request, leaving Petitioner unable to meaningfully access any legal process that could provide relief from his suffering and opportunity to challenge the constitutionality of his detention in light of its impact on his health, while Petitioner was forced to ensure the suffering occasioned by the ongoing deprivation of his liberty, his isolation from all friends and family, and without any access to a hearing or the ability to demonstrate the impact detention was having on him and his health conditions, while also being repeatedly denied requests to access direly-needed medical treatment for his physical health conditions from injuries sustained in Turkey, forced to

experience the slow loss of his ability to hear, to sleep, to chew, and to swallow, to a point where he weighed 134 lbs. despite being 6' tall, and all suffering extreme and near-constant pain from his mouth, his neck, extreme nausea and vomiting, and the inability to shower and bathe himself without triggering his PTSD and risking further harm and injury, which situation still has not changed as of this writing.

No civilized society should subject asylum-seekers to the extreme conditions Petitioner has been forced to endure. The state of abject misery and suffering to which Petitioner has been reduced should shock the conscience of his Court and any reasonable third-party decision-maker scrutinizing the history of his proceedings. No such conditions can be justified in the name of expediency or administrative efficiency. Nor does Respondents' treatment of Petitioner bear any rational connection to the object and purpose of the *Immigration and Nationality Act*, whose purpose is not limited to expedient removal of irregular migrants, but also adequate consideration for asylum claims, and the humane treatment of persons in Respondents' custody. Petitioner's case is instead a highlight reel of all the ways our current system fails asylum-seekers like Petitioner, re-traumatizing him further instead of providing the safety and freedom from persecution, the right to which our nation purports to value, honor, and respect. Petitioner's only opportunity to be heard on these matters without being forced to endure still-more unnecessary suffering now lies before this Court. Petitioner hopes to receive fairer consideration of these facts than he has received thus far from the administrative bodies of Respondent EOIR.

**D.     PRIOR APPLICATIONS**

Have you ever filed a lawsuit, other than this lawsuit, in any federal court in which you raised or could have raised the claim(s) raised in this action? ___ Yes _X_ No (*check one*).

Petitioner has filed a timely Petition for Judicial Review on the merits of his asylum claim before the U.S. Court of Appeals for the Tenth Circuit which is pending review (Bozkus v A.G. Garland, Case No. 22-9574, filed 10/24/2022). The proceedings are pending.

**E.     ADMINISTRATIVE REMEDIES**

*WARNING: You must exhaust administrative and/or state remedies before filing an action in federal court pursuant to 28 U.S.C. § 2241. Your case may be dismissed if you have not exhausted administrative and/or state remedies. If additional space is needed to explain exhaustion, use extra paper to do so. Please indicate that additional paper is attached and label the additional pages regarding exhaustion as "E. ADMINISTRATIVE REMEDIES."*

Explain the steps you have taken to exhaust administrative and/or state remedies:

-Petitioner requested bond in March, 2022; Petitioner's request for bond was denied by the Otero Immigration Court (Girvin, IJ) on March 9th, 2022, due to "flight risk."

-Petitioner's motion for a second custody redetermination hearing was filed pursuant to the regulation (8 C.F.R. §1003.19(d)) with the requisite showing of materially changed circumstances (the recent diagnosis of his mental health conditions (May 17th, 2022) not-then-available at the time of his previous hearing (March 9th, 2022) along with the medical records of his diagnoses

and medical research and a letter of public comment concerning the impact of detention on the mental health of asylum-seekers);

-Petitioner's motion for a hearing was denied by the Otero Immigration Court on June 9th, 2022, with the reason: "Lack of jurisdiction and/or no change."

-Petitioner's appeal of that denial to the BIA, which appeal was filed on June 15th, 2022, and for which a Motion to Expedite BIA Appeal Decision was submitted on July 27th, 2022 with his complete medical record in detention; Petitioner's appeal of the denial of his custody hearing request has gone unanswered, notwithstanding the BIA's decision on his asylum claim on the merits, in support of which appeal the aforementioned Motion to Expedite BIA Appeal decision was also filed. Subsequent attempts to contact the BIA to ascertain when the BIA's decision on the appeal of the denial of his hearing request have been unsuccessful.

-Petitioner requests for parole of Petitioner's Deportation Officer ("DO"), Supervising Detention and Deportation Officer ("SDDO") of the DHS ICE ERO (El Paso Field Office) on April 19th, 2022, again on May 3rd, 2022; were ignored or denied;

-Petitioner repeated requests for parole and for medical care on July 14th and July 18th, 2022 were also ignored or denied;

-Petitioner requested parole, authorization for needed medical care, and for consideration for release under ICE policy from DHS ICE ERO Field Office (Denver) D.O. Sarah Garcia, S.D.D.O. Jerimee R. Joyner, via correspondence from August 19th, 2022 through August 24, 2022; these requests were denied.

-Petitioner requested reconsideration of the denial of his requests from the SDDO and the Acting Deputy Field Office Director / Acting Officer-in-Charge Christopher L. Jones of the ICE ERO Denver Field Office; these requests were denied on September 27th, 2022, which is the same day Petitioner received notice of the denial of his appeal on the merits from the BIA, which are pending further review;

-Petitioner obtained an expert medical report on September 28th, 2022, and requested reconsideration from the DHS ICE ERO Denver Field Office on the basis of the new expert medical evidence not previously available at the time of the previous requests, along with the report of the medical expert. This request was also denied.

-Petitioner's October 28th, 2022 request for a stay of removal from DHS ICE ERO Field Office was denied on November 2nd. Petitioner's request for reconsideration in light of the fact of his pending petition for review, submitted with Petitioner's medical expert report, was also denied on November 9th, 2022.

F.      REQUEST FOR RELIEF

*State the relief you are requesting or what you want the court to do. If additional space is needed to identify the relief you are requesting, use extra paper to request relief. Please indicate that additional paper is attached and label the additional pages regarding relief as "F. REQUEST FOR RELIEF."*

-Order Respondents ICE ERO and Denver Field Office to IMMEDIATELY provide accommodation of Petitioner's mental health impairments by providing him the means to bathe himself in adequate facilities that do not trigger his PTSD (i.e. any access to a bathtub with hot water and no showers or steam will do);

-Immediate Release of Petitioner into the care of his proposed sponsor, Dr. Mujgan Inciler-Strunk, pending the conclusion of Petitioner's immigration proceedings, or, failing that, the provision of effective medical care for Petitioner, especially and in particular referral to an Ear Nose and Throat doctor to repair his ruptured eardrum and assess and treat his chronic pharyngitis, as well as a Neurologist to assess his herniated disc and loss of motor functions;

-In the alternative, issuance of a writ of mandamus to the EOIR to provide Petitioner an evidentiary hearing before whichever agency body has jurisdiction over his custody – whether the BIA due to his still-outstanding appeal of the denial of his hearing request, the Otero Immigration Court which had jurisdiction over Petitioner's proceedings prior to these appeals, or the Aurora Immigration Court which administers proceedings at the detention facility where Petitioner remains held, with the requirement that the government demonstrate, through clear and convincing evidence, that its interest in continued detention of Petitioner is constitutionally justifiable given Petitioner's extreme vulnerability and his prolonged detention's exteme and detrimental impacts on Petitioners mental and physical health, well-being, and its impairment of basic life functions, and to justify why it cannot provide reasonable alternatives to detention more narrowly and appropriately tailored to achieve the government's objectives under the statute without jeopardizing Petitioner's health and safety or subjecting him to needless suffering;

-Clarification of minimum process due proceedings to Petitioner under 8 C.F.R. § 1003.19(d), specifically, that at least 48-72 hours be provided to Petitioner's counsel to prepare and submit replies to government counsel's filings in opposition to bond requests, or whatever minimum time this Court deems reasonable by way of comparison to other similar cases requiring detailed consideration of complex medical evidence and complex medical fact questions in dispute, particularly in light of Petitioner's extreme vulnerability due to his weakened state, his serious mental health conditions, his lack of access to medical care in detention, and his lack of easy access to counsel in detention;

-other emergency and injunctive relief as may be necessary and appropriate for the Court to remedy these ongoing violations to Petitioner's due process rights per Petitioner's forthcoming complaint.

**G.    APPLICANT'S SIGNATURE**

I declare under penalty of perjury that I am the applicant in this action, that I have read this application, and that the information in this application is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this application: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the application otherwise complies with the requirements of Rule 11.

_____
Metin Serbest, Esq.
Counsel to Applicant

December 1st, 2022

(Form Revised December 2017)